# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| MONICA MEEKS,<br><br>*Plaintiff,*<br><br>v.<br><br>CARTER LAWRENCE, in his individual and official capacities as Commissioner of Tennessee Department of Commerce and Insurance;<br><br>*Defendant.* | Civil Action No.: _____<br><br>**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS**<br><br>JURY TRIAL DEMANDED |

GREG HAROLD GREUBEL*
PA Bar No. 321130; NJ Bar No. 171622025;
IA Bar No. AT0015474; CA Bar No. 343028
JAMES C. GRANT*
WA Bar No. 14358
CARY DAVIS*
PA Bar No. 338042
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
P.O. Box 40128
Philadelphia, PA 19106
Tel: (215) 717-3473
greg.greubel@fire.org
jim.grant@fire.org
cary.davis@fire.org

DAVID RUBIN*
CA Bar. No. 329852; D.C. Bar. No. 90021100
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
Tel: (215) 717-3473
david.rubin@fire.org

MELODY FOWLER-GREEN
TN Bar No. 023266
YEZBAK LAW OFFICES PLLC
2901 Dobbs Ave.
Nashville, TN 37211
Tel: (610) 250-2000
mel@yezbaklaw.com

*Pro Hac Vice* Motions Forthcoming

# INTRODUCTION

1.      Monica Meeks served honorably as a U.S. Army Soldier for twenty years to protect and defend the rights of all Americans, including the fundamental rights preserved by the First Amendment. But when Meeks exercised her First Amendment rights by making a personal comment on a friend's Facebook page, she was fired from her job with a Tennessee state agency. Meeks brings this First Amendment lawsuit because Americans who work for the government do not give up their rights to express personal opinions as private citizens when they are off the clock.

2.      After being honorably discharged from the Army, Meeks continued to serve the public by working for the state of Tennessee. For the last nine years, she was employed by the Tennessee Department of Commerce and Insurance ("Department"), most recently as a Financial Services Investigator. She excelled in her job, receiving performance ratings of "Exceeds Expectations" in her last five reviews.

3.      Outside of work, Meeks is a politically engaged citizen who often uses Facebook to interact with friends, including fellow veterans she fondly calls "battle buddies," some of whom hold political views different from hers. After the assassination of Charlie Kirk, one of Meeks' battle buddy friends reposted a meme eulogizing Kirk. Meeks responded with a comment on the friend's Facebook page stating: "The way you tap dance for White Supremacist should be studied!"

4.      Meeks posted her comment from her personal Facebook account, which she uses solely for personal interactions. In communicating with others through this account, Meeks does not identify herself as a state employee in any way, and instead expressly states that all posts reflect her views alone. The comment on her friend's post about Charlie Kirk did not appear on Meeks' Facebook page.

5. However, an online commentator took notice of Meeks' brief comment, apparently went digging on other Internet sites to find mentions that Meeks was a Tennessee state employee, and then rallied others online to demand that she be fired.

6. Meeks is among hundreds or thousands of employees across the country targeted by orchestrated campaigns aimed at causing them to lose their jobs for comments about Charlie Kirk. *See* Raphael Satter & A.J. Vicens, *The Charlie Kirk purge: How 600 Americans were punished in a pro-Trump crackdown*, Reuters (Nov. 19, 2025), https://www.reuters.com/investigations/charlie-kirk-purge-how-600-americans-were-punished-pro-trump-crackdown-2025-11-19.

7. The campaign targeting Meeks resulted in some fifteen comments on the Department's X page calling for her to be fired.

8. Department Commissioner Carter Lawrence fired Meeks at 8:06 pm on September 12, 2025, less than six hours after the "public" tweeted to the Department's X account.

9. Lawrence additionally took the unusual step of announcing his decision to terminate Meeks on the Department's official X, Facebook, LinkedIn, and Instagram accounts that same evening.

10. Commissioner Lawrence's decision to precipitously fire Meeks was based solely on her comment on her friend's Facebook page.

11. Lawrence did not claim Meeks' comment caused any disruption of any kind to the work of the Department, and there was no disruption.

12. Lawrence fired Meeks because he disagreed with her personal views stated online.

13. The First Amendment reflects that "debate on public issues should be uninhibited, robust, and wide-open," even when that may "include vehement, caustic, and sometimes

unpleasantly sharp attacks." *Rankin v. McPherson*, 483 U.S. 378, 387 (1987) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). It is not the government's role to decide what private citizens may say about public issues on their own time. The First Amendment "does not permit one side of a debate to use the government to cancel the other side." *Noble v. Cincinnati & Hamilton Cnty. Pub. Libr.*, 112 F.4th 373, 383 (6th Cir. 2024).

14. By firing Meeks, Lawrence violated her clearly established First Amendment right to speak as a private citizen on matters of public concern. *See Rankin*, 483 U.S. at 383. Lawrence fired Meeks in a brazen attempt "to silence discourse, not because it hampers public functions but simply because [he] disagree[d] with the content of [her] speech." *Id.* at 384.

## JURISDICTION AND VENUE

15. This action arises under the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02. Plaintiff seeks injunctive relief reinstating her to her position, a declaratory judgment that her termination violated her constitutional rights, compensatory and punitive damages, and costs and attorneys' fees.

16. This Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because the Defendant resides in this District.

18. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiff's claims occurred within this District.

# THE PARTIES

**Plaintiff**

19. Monica Meeks is, and at all times relevant to this Complaint was, a resident of Montgomery County, Tennessee.

20. Meeks has dedicated all of her working years to public service. She began by serving in the United States Army for twenty years, including three years as an Assistant Inspector General. Throughout this time, Meeks was stationed in South Korea, Germany, Iraq, and at several posts stateside. Meeks was honorably discharged from the Army in 2012.

21. From 2012 until she was fired earlier this year, Meeks worked for Tennessee state agencies. She served as a uniformed officer in the Tennessee Bureau of Investigation and as a Legislative Investigative Auditor in the Special Investigations Unit of the Tennessee Comptroller of the Treasury. From 2016 to 2018, she worked as an Insurance Fraud Investigator at the Tennessee Department of Commerce and Insurance. From 2018 until her termination, she worked as a Financial Services Investigator at the Department.

**Defendant**

22. Defendant Carter Lawrence is, and at all times relevant to this Complaint was, the Commissioner of the Tennessee Department of Commerce and Insurance.

23. As Commissioner of the Department, Lawrence administers and enforces policies and regulations relating to its employees. *See* TENN. CODE ANN. § 4-3-1302 ("The department of commerce and insurance [is] under the charge and general supervision of the commissioner of commerce and insurance.").

24. Lawrence personally fired Meeks, signed her termination letter, and took public responsibility for her termination by releasing an official statement on the Department's social media accounts. Thus, Lawrence is responsible for violating Meeks' First Amendment rights.

25. At all times relevant to this Complaint, Lawrence acted under color of state law and is sued in his individual and official capacities.

## FACTUAL ALLEGATIONS

*Monica Meeks Excels as a Tennessee State Employee.*

26. Since she began working at the Department in 2016, Meeks consistently excelled in her role, receiving merit raises and bonuses.

27. For the past five years, Meeks received performance ratings of "Exceeds Expectations." Meeks' most recent annual review (dated July 15, 2025), for example, praised her for "actively assist[ing] her coworkers with multiple, multifaceted insurance cases," "serving as a mentor to three new investigators," and "fostering a supportive and nurturing work environment." That review also stated that Meeks took "great care to ensure that complainants … feel supported and not overlooked" by "addressing their concerns with empathy" and building "strong rapport with older potential victims, who deeply value and appreciate her dedication to assisting them." Explaining the "Exceeds Expectations" rating Meeks received, the review commended her "strong sense of personal accountability," her "unwavering [] determination and commitment to doing what is right," her "empathy and understanding," and her "dedication and integrity."

*Meeks' Personal Use of Social Media.*

28. Like millions of Americans, Meeks regularly uses social media to communicate with family and friends. Oftentimes (and again like millions of others in the country), Meeks addresses public issues of the day and expresses her personal opinions.

29. Meeks is also active in her community. She has twice run for public office and spends countless hours volunteering for causes she cares about—in particular, helping veterans succeed in life after their military service.

30. Throughout her years working at the Department, Meeks has regularly posted on social media about public issues, most often through Facebook. In communications through her Facebook account, Meeks does not identify herself as a state employee. Quite the contrary, her Facebook page expressly states that all her posts and content reflect her personal views, and hers alone.

31. Among her Facebook "friends," Meeks stays in touch with other veterans, whom she fondly refers to as "battle buddies."

32. At no time during her tenure with the Department did Meeks' personal speech on social media affect her ability to perform her job.

33. No Department employee who worked with Meeks ever objected to her personal social media use.

34. No member of the public the Department served or with whom Meeks interacted ever made any comment or complaint about her personal comments on social media.

***Meeks' Facebook Comment to a Friend After Charlie Kirk's Assassination.***

35. On September 10, 2025, Charlie Kirk was assassinated while speaking at Utah Valley University.

36. The next day, September 11, 2025, Meeks' veteran friend and "battle buddy," Ac Lopez, reposted a meme on his Facebook page eulogizing Kirk.

37. Lopez and Meeks have different political views. They enjoy discussing and debating opinions on public issues, and do so as friends.

38. Shortly after Lopez's reposting of the meme, Meeks responded in a comment to his Facebook page: "The way you tap dance for White Supremacist should be studied!"



39. Meeks made her comment on Lopez's post from her personal Facebook account on her own time, after work.

40. Meeks' comment did not appear on her Facebook account, but only as a comment on Lopez's Facebook page.

*Online Commentators Complain About Meeks to the Department.*

41. The day after Meeks commented on Lopez's Facebook post, an online commentator, Virgil Davis Hunt, posted a screenshot of Meeks' comment on X, tagging Meeks and the Department.

42. Hunt's X post included an excerpt from a screenshot presumably gathered from online research to show Meeks was employed by the Department and made a not-so-subtle suggestion that she should be fired for her views:

[1]

43. By tagging the Department's official X account ("@TNCommerceInsur") Hunt's post was sent to and received by the Department.

---

[1] Virgil Davis Hunt (@vrgldh), X (Sep. 12, 2025 at 2:44 EDT), https://x.com/vrgldh/status/1966573553559412753 [https://perma.cc/3MHT-AG6R].

44. Within approximately an hour, fourteen additional X posts calling for Meeks' termination appeared on a post by the Department's X account. The comments were identified as coming from X users such as "Spicyorange72," "NonGMOKaren," "Bonerville Asskicker," and "HB SurfDog." For example, X user "Bonerville Asskicker" tweeted, "Why do you employ people that support terrorism?" "NonGMOKaren" wrote, "We are waiting for this vile person to be fired. There is no room for any debate on this."

45. There is no indication that any of these comments were from anyone who had ever had any dealings with the Department, nor that any of the comments were from Tennesseans or even from real people. X initially flagged two of the comments as "Probable spam" and has since flagged two more in the same way.

*Commissioner Lawrence Rushes to Terminate Meeks Based Solely on Her Facebook Comment.*

46. On information and belief, Kevin Walters, the Department's Communications Director, was instructed to compile information from online sources concerning Meeks and the complaints sent to the Department's X account about her Facebook comment.

47. Walters took screenshots of the fourteen comments on X (as of 2:53 pm CDT on September 12, 2025).

48. Also, because Meeks' Facebook profile did not identify her as a Tennessee state employee, Walters searched other Internet sites and web pages going back several years to locate information to connect Meeks with the Department.

49. Walters' search unearthed two old posts that mentioned Meeks' employment with the Department. The first, dated November 9, 2021, was an announcement that Meeks would be speaking at an event of the American Association of Retired Persons (AARP) on fraud prevention for veterans. The second, dated March 31, 2022, was a post by the Department praising Meeks for

an article featuring her in *Fraud Magazine*, in which Assistant Commissioner Elizabeth Bowling said: "Monica is especially deserving of this attention as she sets the standard for our Financial Services Investigation Unit section."

50. The purpose of Walters' Internet research was to come up with some showing that Meeks could be identified as a Department employee, given that Meeks herself did not mention her employment and expressly stated that all her posts and content on her Facebook page were entirely personal.

51. Walters forwarded to his superiors the screenshots of the information he found.

52. In a hastily prepared letter recommending Meeks be fired, Assistant Commissioner Bowling then referred to these two screenshots as "several posts, viewable by the public, which clearly identify [Meeks] as a Department employee."

53. Lawrence fired Meeks the night of September 12, 2025, approximately six hours after the first criticism on X about her private Facebook comment. Lawrence signed Meeks' termination letter at 8:06 pm CDT, and did so without waiting for a formal recommendation from his staff.

54. Assistant Commissioner Bowling and Deputy Commissioner Bill Huddleston had worked on preparing a recommendation to paper Meeks' termination, but they did not sign it until 45 minutes after Lawrence executed the termination.

55. In the termination letter, Lawrence acknowledged that Meeks' Facebook comment to a friend about Charlie Kirk was the sole reason she was being fired, because, in his view, Meeks' comment was "inflammatory" and "insulting," and purportedly "brought extremely negative attention to [her] face and name."

56. Assistant Commissioner Bowling similarly said in her recommendation memo that Meeks' one-line allusion to Kirk in the personal Facebook comment was "incendiary."

57. Meeks' one-line Facebook comment to her "battle buddy" Ac Lopez did not praise or celebrate Charlie Kirk's murder; she said nothing of the sort. Meeks' comment took issue with Kirk's public statements and political views.

58. Lawrence's letter asserted without explanation that Meeks had violated the state's Code of Conduct for employees and the Department's human resources policies, including its Policy on Personal Use of Social Media ("Social Media Policy"), for her one Facebook comment to a friend's post about Charlie Kirk.

59. The Department's Social Media Policy acknowledges that an "employee's use and comments made on social media sites are subject to First Amendment protections." It additionally provides that employees' personal social media use "must be conducted in such a manner that a reader would not think that the employee is speaking for or on behalf of his/her agency or department."

60. In her Facebook comment to Ac Lopez's post, Meeks did not purport to speak for the Department. She did not mention the Department in any way.

61. Neither Lawrence nor anyone in the Department has shown or ever suggested that Meeks' personal comment to her friend on Facebook could in any way be interpreted as a communication of or on behalf of the Department.

62. Other than attaching Walters' screenshots of the 2021 and 2022 posts, Lawrence's letter did not explain how Meeks had allegedly violated the Department's Social Media Policy for having made a private comment on social media on her own time, off-the-clock, and having nothing whatever to do with her employment with the Department.

63. At 9:36 pm CDT on September 12, 2025, Meeks received an email in her personal inbox from a Department human resources representative telling her she had been fired and attaching Lawrence's termination letter.

***Commissioner Lawrence Publicly Announces Meeks' Termination.***

64. Six minutes after the termination letter arrived in Meeks' email inbox (at 9:42 pm CDT), Lawrence announced her termination on the Department's official X account.

65. In this public pronouncement, Lawrence reiterated that Meeks' termination was solely due to her one comment to a friend on Facebook:



66. The Department posted Lawrence's termination letter on its Facebook, Instagram, and LinkedIn pages, in addition to its official X page.

67. On information and belief, Lawrence and the Department have never before publicly proclaimed and touted termination of any Department employee, nor sought to garner public favor for having done so.

68. Lawrence's public pronouncement of Meeks' termination asserted that "investigation into her social media … revealed bias and disregard toward the very people she was tasked with serving." Lawrence cited nothing to support this assertion, which was untrue.

69. Lawrence's pronouncement indicated Meeks had exhibited discriminatory animus toward her fellow citizens though there is no basis in Meeks' employment history with the Department for such an accusation, which is also untrue.

***Meeks' Facebook Comment Did Not Impair the Department or Its Work.***

70. As reflected in his termination letter and his public pronouncement, Lawrence decided to terminate Meeks solely because of her Facebook comment, with which he disagreed.

71. Assistant Commissioner Bowling and Deputy Commissioner Huddleston recommended that Meeks be fired solely because of her Facebook comment.

72. None of these officials, nor anyone else in the Department identified or alleged any disruption of the Department's work or operations related in any way to Meeks' personal Facebook comment.

73. None of Meeks' coworkers complained about her Facebook comment or asserted that there had been any disruption of the Department's work or operations in any way.

74. Meeks received no opportunity to address or respond to the termination before its announcement. Lawrence's and the Department's actions were a *fait accompli*.

75. There was no disruption of the Department's work as a result of Meeks' personal Facebook comment.

76. There was no interruption or interference with the Department's provision of services to Tennesseans as a result of Meeks' personal Facebook comment.

77. Meeks' expression of an opinion through her Facebook account did not impair the Department's mission or work in any way, and there is no indication that any client or constituent of the Department ever saw or cared about Meeks' personal Facebook comment.

78. No reasonable official in Lawrence's position could have concluded that Meeks' personal comment to a friend would impair discipline, harmony, public trust, or workplace functioning.

***Meeks Appeals Her Termination.***

79. Meeks appealed her termination pursuant to TENN. CODE ANN. § 8-30-318, submitting a Step I Appeal to the Department on September 15, 2025.

80. At a hearing on the appeal on September 29, 2025, Meeks asserted that her termination violated her First Amendment rights.

81. Lawrence denied Meeks' Step I Appeal and upheld her termination on October 1, 2025.

82. Meeks submitted a Step II Appeal to the Department on October 15, 2025, arguing that the Step I decision was in error and should be overturned because her termination violated her First Amendment right as a public employee to speak as a citizen on a matter of public concern.

83. On November 7, 2025, the Department conceded that Meeks had spoken in her personal capacity as a private citizen on a matter of public concern but contended "her limited

speech interest" was outweighed by "the employer's interest in maintaining public trust, professionalism, and workplace efficiency."

84. Meeks has not submitted and is not obligated to submit a Step III Appeal.[2]

85. Meeks has consistently expressed her desire to return to her job and remains willing and able to perform all essential duties of the Financial Services Investigator position. No facts exist indicating that reinstatement would be infeasible or inappropriate.

**CAUSE OF ACTION**
**First Amendment Retaliation Under 42 U.S.C. § 1983**
**(Against Carter Lawrence in His Individual and Official Capacities)**

86. Meeks re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

87. "It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin*, 483 U.S. at 383.

88. As described above, Lawrence made the decision to fire Meeks solely because of her one comment through her personal Facebook account to a friend expressing her personal view about the friend's post concerning Charlie Kirk, despite knowing the First Amendment protected Meeks' speech, and with no justifiable interest in the Department precluding or punishing Meeks' personal speech on a public issue.

---

[2] *See Patsy v. Board of Regents of State of Florida*, 457 U.S. 496, 516 (1982) (holding that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983"); *Pakdel v. City and County of San Francisco, California*, 594 U.S. 474, 475 (2021) (holding that requirement to comply with "agency's administrative procedures for seeking relief" was "at odds with 'the settled rule … that exhaustion of state remedies is *not* a prerequisite to an action under 42 U.S.C. § 1983'") (quoting *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019)).

89. In doing so, Lawrence unconstitutionally took a calculated adverse employment action against Meeks in retaliation for her protected speech. *See Noble*, 112 F.4th at 385 (public employee's "hyperbolic speech" on Facebook "was not enough to fire him").

90. By firing Meeks for speaking as a private citizen on a matter of public concern, Lawrence violated Meeks' clearly established First Amendment rights that any reasonable government official would recognize as protected and unlawful to infringe upon.

91. Lawrence rushed to terminate Meeks with callous disregard for her First Amendment rights. Lawrence acted recklessly and without cause by terminating Meeks based solely on social media comments, failing to conduct any investigation into whether her speech disrupted the work environment, failing to wait for his subordinates to make any recommendation, and announcing his decision to fire her on social media. *See id.* at 384 (noting a public employer's forecast of disruption "must be objectively reasonable" and cannot be based solely on an employee expressing a view contrary to the powers-that-be at that institution).

92. As a direct and proximate result of Lawrence's actions as described above, Meeks was deprived of her constitutional right to free expression and experienced emotional distress and financial losses. Meeks lost her job, her paycheck, and her employee benefits to which she was entitled. Meeks has also experienced anxiety, depression, and humiliation because of her termination and treatment by Lawrence and the Department, and she has sought and obtained professional help to address these issues since her termination.

93. Meeks has suffered irreparable harm because of Lawrence's termination, as it likely precludes her from future employment with the Tennessee state government, thereby foreclosing her from the career she has successfully pursued for a decade. Meeks' dismissal also means she will lose much or most of the benefits of training, experience, and expertise she has developed

concerning insurance and fraud issues, skills uniquely applicable to the position she held with the Department. Meeks has also lost retirement and other benefits she earned in her position with the Department.

94. As a legal consequence of Lawrence's violation of Meeks' First Amendment rights, Meeks is entitled to compensatory and punitive damages from Lawrence in his individual capacity, as well as the reasonable costs of this action, including attorneys' fees.

95. Meeks is also entitled to injunctive relief reinstating her to her position and a declaration that her termination was unlawful retaliation for her protected expression.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Monica Meeks respectfully requests that this Court enter judgment against Defendant Lawrence and issue the following forms of relief:

A. An injunction and order directing that Meeks be reinstated to her position as Financial Services Investigator 3 in the Tennessee Department of Commerce and Insurance;

B. A declaratory judgment that Lawrence unconstitutionally retaliated against Meeks because of speech protected under the First and Fourteenth Amendments to the Constitution of the United States;

C. An award of monetary damages against Lawrence in his individual capacity in an amount to be determined by the Court and Jury to compensate Meeks for unconstitutional interference with and infringement of Meeks' rights;

D. An award of punitive damages against Lawrence for his reckless and callous disregard for Meeks' First Amendment rights;

E. An award of attorneys' fees and costs against Lawrence under 42 U.S.C. § 1988 and other applicable law; and

F. All other further legal and equitable relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In compliance with Fed. R. Civ. P. 38, Plaintiff demands a trial by jury on all issues so triable.

DATED: December 10, 2025

Respectfully submitted,

*/s/ Melody Fowler-Green*
MELODY FOWLER-GREEN
TN Bar No. 023266
YEZBAK LAW OFFICES PLLC
P.O. Box 159033
Nashville, TN 37215
Tel: (610) 250-2000
mel@yezbaklaw.com

*/s/ Greg H. Greubel*
GREG HAROLD GREUBEL*
PA Bar No. 321130; NJ Bar No. 171622025;
IA Bar No. AT0015474; CA Bar No. 343028
*/s/ James C. Grant*
JAMES C. GRANT*
WA Bar No. 14358
*/s/ Cary Davis*
CARY DAVIS*
PA Bar No. 338042
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
P.O. Box 40128
Philadelphia, PA 19106
Tel: (215) 717-3473
greg.greubel@fire.org
jim.grant@fire.org
cary.davis@fire.org

*/s/ David Rubin*
DAVID RUBIN*
CA Bar. No. 329852; D.C. Bar. No. 90021100
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340

Washington, DC 20003
Tel: (215) 717-3473
david.rubin@fire.org

*<em>Pro Hac Vice</em> Motions Forthcoming

<em>Counsel for Plaintiff Monica Meeks</em>