**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

MONICA MEEKS,

*Plaintiff*,

v.

CARTER LAWRENCE, in his individual and official capacities as Commissioner of Tennessee Department of Commerce and Insurance

*Defendant*.

Civil Action No. 3:25-cv-01431
Judge Aleta A. Trauger

---

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

---

Plaintiff's response does nothing to change the fact that (1) she has failed to state a claim for First Amendment retaliation and (2) Defendant is entitled to qualified immunity. Plaintiff's callous and inappropriate comment following the gruesome death of Charlie Kirk is not protected conduct. And Defendant's determination that it would reflect poorly on the Department and justify termination was not only lawful but also entitled to qualified immunity.

## I. Plaintiff Did Not Engage in Protected Conduct.

To survive dismissal, Plaintiff's allegations must show that her statement—"The way you tap dance for White Supremacist should be studied!"—in reference to a meme eulogizing Charlie Kirk was more valuable than the Department's interest in providing unbiased service to all Tennesseans. *Schenck v. United States*, 249 U.S. 47, 52 (1919); Dkt. 1 ¶ 3. It was not. Her brazen and crass characterization of Kirk's supporters following his cold-blooded, politically-motivated murder "is entitled to less weight in the *Pickering* balance." *Darlingh v. Maddaleni*, 142 F.4th 558, 566 (7th Cir. 2025); Dkt. 31, at 4. That Plaintiff saw fit to link him, just after his murder, to white supremacy and criticize and mock all those who support him, Dkt. 1 ¶ 3l, led Defendant to the reasonable conclusion that she could become a distraction to the work of the Department. Dkt. 21 at 20[1]. So Defendant comes out ahead in the *Pickering* balance, especially given the "wide degree of deference" his judgment warrants. *Connick v. Myers*, 461 U.S. 138, 151-52 (1983); Dkt. 21 at 20. And Plaintiff cannot state a claim for First Amendment retaliation when the First Amendment does not protect her conduct.

***First***, Plaintiff cannot save her complaint by implausibly stretching its allegations to plead what she did not. She suggests that "[t]he facts as pled in the Complaint lead to only one conclusion: Lawrence fired Meeks because he disagreed with the personal political views she expressed online." Dkt. 31, at 3. But that conclusion is unsupported by any facts or allegations in the complaint. Plaintiff's

[1] Page cites are to ECF page ID numbers.

complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021). She only gets the benefit of "*reasonable* inferences." *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016) (emphasis added). And this Court must use "judicial experience and common sense" to decide if the claims are "plausible." *Crawford,* 15 F.4th at 762 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Plaintiff's misleading and unsupported inferential leaps do not meet that plausibility standard.

Plaintiff's characterization of her post as a "good-natured jab," Dkt. 31, at 5; *see also* Dkt. 1 ¶ 28, is implausible. It is unsupported by the allegations in her complaint and common sense. *See Crawford*, 15 F.4th at 762. Additionally, Plaintiff's speculative and drastic allegations that Defendant and Assistant Commissioner Bowling conspired against her and acted "hastily" to terminate her find no support in the complaint. *See* Dkt. 31 at 6-7. Plaintiff concedes that the decision to terminate her was made "approximately *six hours* after the first criticism on X about her private Facebook comment." Dkt. 1, at ¶ 53 (emphasis added). Even if the decision to terminate Plaintiff was made without a "formal recommendation" from Commissioner Lawrence's staff, that does not establish the decision was made "hastily." *Id.* Indeed, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

And Plaintiff's suggestion that she should not have been fired based on prior performance reviews fares no better. An inference cannot be drawn from allegations of her "excell[ing] in her role" that she was somehow entitled to immunity from termination for her incendiary comment. It bears no relevance to whether her speech was protected and her termination was proper. Dkt. 31, at 4.

***Second***, the cases that Plaintiff cites support dismissal because her post was not protected speech. Consider *Noble*. There, "no member of the public ever complained about [his] post," and indeed, it was unlikely "that the public would have seen the post." *Noble v. Cincinnati & Hamilton Cnty. Pub. Libr.,* 112 F.4th 373, 384 (6th Cir. 2024). Not so here. Plaintiff's allegations show that the public

backlash was swift. Her comment garnered significant attention after a commentator posted a screenshot of it on his X account—with thousands of followers—and tagged the Department. So unlike in *Noble*, Defendant's "anticipation of disruption" was "objectively reasonable." *Noble,* 112 F.4th at 383.

Moreover, the substance of the message was very different in *Noble*. Plaintiff's statement brands Kirk and his millions of supporters as White Supremacists, which fundamentally differs from Noble's hypothetical meme about protest tactics. *Noble*, 112 F.4th at 381. In *Noble*, the Sixth Circuit emphasized that "there is no evidence that Noble literally wanted 'lives' to 'splatter' or for a vehicle to run over any protestor," and it characterized his meme as "only hyperbole, albeit a highly offensive message." *Id.* at 379. Hence, *Noble's* speech was merely opposition to protest methods. *Id.* at 383. In contrast, Plaintiff's statement typecasted all who supported Kirk—even all who mourned his assassination—racist "White Supremacist[s]." Dkt. 1 ¶ 3. That's not merely hyperbolic political commentary about protests.

*Rankin* also gives her no shelter. Like *Noble*, it involved a hypothetical vastly different than the reprehensible statements here. *Rankin v. McPherson*, 483 U.S. 378, 386 (1987). The *Rankin* Court carefully distinguished McPherson's statement from unprotected speech by emphasizing it was made "in the course of a conversation addressing the policies of the President's administration;" it only represented wishful thinking about future events. *Id.* at 386. The Court noted that "while a statement that amounted to a threat to kill the President would not be protected," McPherson's statement was political commentary about hoped-for events, not the mocking of a murdered commentator and his many supporters. *Id.* at 387.

Here, Plaintiff's comment was not just political commentary. It demonstrated her prejudicial views toward Kirk and his supporters and it jeopardized the public's perception of her as an unbiased investigator for the State and all its citizens. For that reason, Defendant's decision to terminate her was justified, even before actual disruption occurred. As the Sixth Circuit found, "[n]either *Rankin* nor

*Pickering* explicitly hold that the government must show actual disruption" to withstand a First Amendment challenge. *Gillis v. Miller*, 845 F.3d 677, 686 (6th Cir. 2017) ("The Second, Third, Seventh, Eighth, Ninth, and Eleventh Circuits have each held that evidence of actual disruption is not required.").

## II. Even if Plaintiff's Conduct Were Protected, That Was Not Clearly Established When Defendant Terminated Her Employment.

Defendant is entitled to qualified immunity regardless. Plaintiff has the burden to show it was "clearly established" that she had engaged in protected conduct when she was terminated. Dkt. 21, at 23. As the Supreme Court recently re-emphasized in a per curiam summary reversal: "A right is not clearly established if existing precedent does not place the constitutional question 'beyond debate.'" *Zorn v. Linton*, 607 U.S. __, 2026 WL 795469, at *2 (March 23, 2026) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021)). Plaintiff's right, as a public employee with a public-facing duty of neutrality, to label Kirk and—by extension—his supporters white supremacists was not "beyond debate." *Id.*

Plaintiff's response does not carry her burden of establishing that Defendant's *Pickering* balance was clearly unreasonable. *Pleasant View Baptist Church v. Beshear*, 78 F.4th 286, 295 (6th Cir. 2023).

***First*,** Tennessee federal courts *consistently* grant qualified immunity in *Pickering* cases based on the context-intensive balancing analysis. For example, *Handy-Clay v. City of Memphis* relied on Sixth Circuit precedent that "if an employer in the position of the defendants at the time of the adverse job action, measured objectively, could have disagreed as to (1) whether and to what extent the speech was a matter of public concern, and (2) where the *Pickering* scale, with all of the parties' competing interests in the balance, would ultimately come to rest." No. 10-2927-STA-TMP, 2013 WL 5305239, at *20 n.130 (W.D. Tenn. Sept. 19, 2013) (quoting *Akridge v. Wilkinson*, 178 F. App'x 474, 481 (6th Cir. 2006)). Given the concrete link to white supremacy compared to the speech in *Noble* or *Rankin*, reasonable officials could at least disagree whether it lost the benefit of First Amendment protection.

***Second***, while Plaintiff disregards the importance of *Bennett*, Dkt. 31, at 21-22, *Bennett* does factor into whether her right to criticize Kirk and his supporters was clearly established. *Bennett*

provides another example where the *Pickering* balance weighed in favor of the employer; it found that Bennett's racially offensive speech was not part of "highest rung" of protected speech under the First Amendment and that multiple factors heavily favored termination. It is therefore consistent with finding that Plaintiff lacked a clearly established constitutional right and that Defendant is entitled to qualified immunity. *Bennett*, 977 F.3d at 538; see *also DeCrane v. Eckart*, 12 F.4th 586, 594 (6th Cir. 2021); *Guercio v. Brody*, 911 F.2d 1179, 1184 (6th Cir. 1990) (requiring plaintiff to show clearly established right "beyond debate" to overcome qualified immunity in § 1983 action).). Dismissal is thus appropriate. *See Crawford*, 15 F.4th at762.

***Third,*** the factually-analogous *Stokes* confirms Defendant is entitled to qualified immunity under *Pickering*. *Stokes v. Boyce*, No. 3:25-CV-307-GHD-RP, 2026 WL 755189, at *5 (N.D. Miss. Mar. 16, 2026). There, the plaintiff, an Executive Assistant at the University of Mississippi, reposted a statement explicitly characterizing Charlie Kirk as a "white supremacist and reimagined Klan member" who deserved his fate; she was terminated after "[t]he statement garnered a great deal of attention and was widely commented upon and negatively received." *Id.* at 1. *Stokes* establishes that qualified immunity protects termination decisions involving incendiary or racially-charged statements online because the law is not clearly established. Indeed, "there will *rarely be a basis* for an a priori judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights" given the case-by-case nature of *Pickering* balancing. *Id.* at 4 (quoting *Noyola v. Texas Dep't of Hum. Res.*, 846 F.2d 1021, 1025 (5th Cir. 1988) (emphasis added)). Plaintiff's Opposition fails to show such a "rare" case here.

## CONCLUSION

For all these reasons, the Court should dismiss the Complaint because it fails to state a claim for First Amendment retaliation. At minimum, qualified immunity bars Plaintiff's individual-capacity claims against Defendant Lawrence.

Date: March 30, 2026

Respectfully submitted,

*/s/ Jessica S. Berk*
JESSICA S. BERK, BPR# 043649
Assistant Attorney General
GARY DUNN, NY 5676317
Acting Assistant Attorney General
ZACHARY L. BARKER, BPR# 035933
Senior Assistant Attorney General
Constitutional Defense Division
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-8726
Jessica.Berk@ag.tn.gov
Gary.Dunn@ag.tn.gov
Zachary.Barker@ag.tn.gov

*Counsel for Defendant Commissioner Lawrence in his official and individual capacities*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's electronic filing system on this 30th day of March, 2026 to all counsel of record.

Melody Fowler-Green
N. Chase Teeples
Yezbak Law Offices PLLC
P.O. Box 159033
Nashville, TN 37215-9937
Phone: 615-250-2000
Fax: 615-250-2020
mel@yezbaklaw.com
teeples@yezbaklaw.com

James C. Grant
Davis Wright Tremaine LLP
920 5th Ave., Suite 300
Seattle, WA 98104
Phone: 206-757-8096
Fax: 206-757-7096
jimgrant@dwt.com

*Counsel for Plaintiff*

Cary H. Davis
Greg H. Greubel
Foundation for Individual Rights and Expression
P.O. Box 40128
Philadelphia, PA 19106
Phone: 215-717-3473
cary.davis@fire.org
greg.greubel@fire.org

David H. Rubin
Foundation for Individual Rights and Expression
700 Pennsylvania Ave. SE Suite 340
Washington, DC 20003
Phone: 215-717-3473
david.rubin@fire.org

*Counsel for Plaintiff*

*/s/ Jessica S. Berk*
JESSICA S. BERK
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
Jessica.Berk@ag.tn.gov

*Counsel for Defendant Commissioner Lawrence in his official and individual capacities*