**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MONICA MEEKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:25-cv-01431** |
| | ) | **Judge Aleta A. Trauger** |
| **CARTER LAWRENCE, in his individual and official capacities as Commissioner of Tennessee Department of Commerce and Insurance,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

Plaintiff Monica Meeks brings a single claim under 42 U.S.C. § 1983 against Carter Lawrence, in his individual capacity and in his official capacity as Commissioner of the Tennessee Department of Commerce and Insurance (the "Department"), for terminating Meeks' employment with the Department in alleged retaliation for Meeks' exercise of her First Amendment rights. (Compl., Doc. No. 1.) Lawrence has filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 20.) For the following reasons, the Motion to Dismiss will be denied in its entirety.

## I. BACKGROUND

### A. The Parties

The following factual allegations are taken from the Complaint and are accepted as true at the pleading stage. Meeks is an individual who resides in Montgomery County, Tennessee. (Doc. No. 1 ¶ 19.) In 2012, Meeks began working for various Tennessee state agencies after twenty years of service in the Army. (*Id.* ¶¶ 20–21.) Since 2018, Meeks has been employed with the Department, most recently as a Financial Services Investigator. (*Id.* ¶¶ 2, 21.) During this time, Meeks has

earned professional performance ratings of "Exceeds Expectations" and has been commended by the Department for "serving as a mentor," "fostering a supportive and nurturing work environment," displaying an "unwavering [] determination and commitment to doing what is right," and taking "great care to ensure that" victims of fraud who request the Department's assistance "feel supported and not overlooked." (*Id.* ¶ 27.) Lawrence has served as the Commissioner of the Department throughout the relevant period. (*Id.* ¶ 22.)

### B. Social Media Postings

On September 10, 2025, the political activist Charlie Kirk was shot and killed while speaking on the campus of Utah Valley University. (*Id.* ¶ 35.) The next day, an online friend of Meeks' reposted a meme eulogizing Kirk. (*Id.* ¶ 36.) Meeks responded by posting a comment to her friend's repost. (*Id.* ¶ 38.) Meeks' comment read as follows: "The way you tap dance for White Supremacist should be studied!" (*Id.*) Meeks made this comment "on her own time, after work," using her private Facebook account that does not identify Meeks as a state employee and "expressly states that all her posts and content reflect her personal views, and hers alone." (*Id.* ¶¶ 30, 39.)

The day after Meeks posted her comment, an online commentator posted a screenshot of Meeks' Facebook comment on X (formerly known as Twitter), tagging Meeks' private X account and the Department's official account. (*Id.* ¶ 41.) The online commentator's post read as follows: "Does the [Department] support the views of its employee, [Meeks]?" (*Id.* ¶ 42.) Other users on X chimed in, accusing Meeks of "supporting terrorism" and demanding her firing. (*Id.* ¶ 44.)

### C. Lawrence Terminates Meeks' Employment

The Department's leadership soon became aware of the online posts demanding Meeks' firing. Kevin Walters, the Department's communication director, was enlisted by higher-ups "to

compile information from online sources concerning Meeks and the complaints sent to the Department's X account about her Facebook comment" and "to locate information" online "to connect Meeks with the Department." (*Id.* ¶¶ 46–48.) This task proved difficult "because Meeks' Facebook profile did not identify her as a Tennessee state employee." (*Id.* ¶ 48.) After scouring the internet, Walters "unearthed two old posts" that tied Meeks to the Department. (*Id.* ¶ 49.) The first post was an announcement from 2021 "that Meeks would be speaking at an event of the American Association of Retired Persons (AARP) on fraud prevention for veterans." (*Id.*) The second post was from 2022 by the Department itself, "praising Meeks for an article" published in an industry magazine that featured her. (*Id.*) In the second post, the Department's leadership recognized Meeks as "especially deserving of this attention as she sets the standard for our Financial Services Investigation Unit section." (*Id.*)

Armed with Walters' dossier, a "hastily prepared letter recommending Meeks be fired" was drawn up. (*Id.* ¶¶ 51–52.) The letter allegedly characterized the two posts unearthed by Walters as "several posts, viewable by the public, which clearly identify [Meeks] as a Department employee." (*Id.* ¶ 52.) On September 12, 2025, Lawrence fired Meeks—"without waiting for a formal recommendation from his staff" and only six hours after the first post appeared on X, criticizing Meeks for the comment she made a day earlier using her private Facebook account. (*Id.* ¶ 53.) In the termination letter he signed, Lawrence acknowledged that Meeks' comment about Charlie Kirk was the sole reason she was being fired. (*Id.* ¶ 55.) Lawrence described the contents of Meeks' comment as "inflammatory," "insulting," and bringing "extremely negative attention to [her] face and name." (*Id.*)

The termination letter also asserted that Meeks' online comment "had violated the state's Code of Conduct for employees and the Department's human resources policies, including its

Policy on Personal Use of Social Media ('Social Media Policy')." (*Id.* ¶ 58.) The Department's Social Media Policy apparently "acknowledges that an 'employee's use and comments made on social media sites are subject to First Amendment protections'" and "that employees' personal social media use 'must be conducted in such a manner that a reader would not think that the employee is speaking for or on behalf of his/her agency or department.'" (*Id.* ¶ 59.)

### D. Lawrence Publicly Announces Meeks' Termination

Six minutes after the termination letter arrived in Meeks' email inbox, Lawrence publicized the termination of Meeks on the Department's official social media accounts. (*Id.* ¶¶ 64, 66.) Lawrence publicly reiterated that Meeks was terminated for "comments … regarding the tragic murder of Charlie Kirk." (*Id.* ¶ 65.) He also stated that a "[f]urther investigation into [Meeks'] social media" revealed that "she linked herself to the Department." (*Id.*) According to Meeks, the Department has "never before publicly proclaimed and touted termination of any Department employee, nor sought to garner public favor for having done so." (*Id.* ¶ 67.)

## II. PROCEDURAL HISTORY

### A. Meeks Appeals Lawrence's Termination Decision

Meeks challenged her termination under Tenn. Code. Ann. § 8-30-318 by submitting a Step I Appeal to the Department on September 15, 2025. (*Id.* ¶ 79.) After a hearing, Lawrence denied Meeks' Step I Appeal and upheld her termination. (*Id.* ¶¶ 80–81.) Later, Meeks filed a Step II Appeal to the Department, arguing that the Department erred in its Step I decision "because her termination violated her First Amendment right as a public employee to speak as a citizen on a matter of public concern." (*Id.* ¶ 82.) On November 7, 2025, the Department issued a decision conceding that Meeks had spoken in her personal capacity as a private citizen on a matter of public concern. (*Id.* ¶ 83.) Nevertheless, the Department denied her Step II Appeal after concluding that "'her limited speech interest' was outweighed by 'the employer's interest in maintaining public

trust, professionalism, and workplace efficiency.'" (*Id.*) Meeks has not submitted a Step III Appeal, which she contends is not required before resorting to litigation. (*Id.* ¶ 84.)[1]

### B. This Case

In December 2025, Meeks filed her Complaint, asserting a single claim against Lawrence under 42 U.S.C. § 1983 in his individual and official capacities for First Amendment retaliation. (*Id.* ¶¶ 86–95.) The Complaint invokes this court's jurisdiction under 28 U.S.C. §§ 1331 and 1343. (*Id.* ¶ 16.)

In February 2026, Lawrence filed a Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 20), which was accompanied by a supporting Memorandum of Law. (Doc. No. 21.) In March 2026, Meeks filed a Response in Opposition to the Defendant's Motion to Dismiss. (Doc. No. 31.) Written briefing on the Motion to Dismiss concluded when Lawrence filed a Reply in Support of Defendant's Motion to Dismiss. (Doc. No. 32.)

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the allegations in the complaint contain enough factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, legal conclusions supported

---

[1] *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019) (recognizing "that exhaustion of state remedies is *not* a prerequisite to an action under [42 U.S.C.] § 1983.") (emphasis in the original) (citation and quotation marks omitted).

by mere conclusory statements, or allegations that are merely *consistent* with the defendant's liability are insufficient to plausibly state a claim for relief. *Id.* at 678–79. The court must accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor to determine whether a complaint states a facially plausible claim. *Mich. First Credit Union v. T-Mobile USA, Inc.*, 108 F.4th 421, 425 (6th Cir. 2024).

## IV. DISCUSSION

Lawrence raises two arguments as grounds for dismissal of Meeks' § 1983 claim. First, Lawrence asserts Meeks has failed to state a claim for First Amendment retaliation because "[s]he cannot show that her interest in attacking anyone who shares Mr. Kirk's political views as racists outweighs the Department's interest in operating effectively for *all* the State's citizens." (Doc. No. 21 at 15 (emphasis in original).) Second, independently, Lawrence argues that qualified immunity bars Meeks' claim against him in his individual capacity because Meeks cannot demonstrate that "it was clearly established that she had engaged in conduct protected by the First Amendment" when Lawrence terminated her. (*Id.* at 23.) As detailed below, the court declines to resolve either of these two arguments at the pleading stage.

### A. Meeks' Claim for First Amendment Retaliation

To state a claim for First Amendment retaliation, a plaintiff must allege that:

> (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; [and] (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct.

*Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017) (quoting *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012)).

When, as here, a public employee brings a First Amendment retaliation claim, the public employee must satisfy three sub-elements to establish the first element of a claim for First Amendment retaliation—*i.e.*, that the public employee was engaged in constitutionally-protected speech or conduct. *Dambrot v. Cent. Michigan Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995). Those three sub-elements are: (1) the employee must speak on "matters of public concern"; (2) the employee must speak as a private citizen and not as an employee pursuant to his official duties; and (3) the employee must show that his speech interest outweighs "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Bennett v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 977 F.3d 530, 537 (6th Cir. 2020). These three sub-elements are known as the *Pickering* balancing test after *Pickering v. Board of Education,* 391 U.S. 563, 572–73 (1968). *E.g.*, *DeCrane v. Eckart*, 12 F.4th 586, 594 (6th Cir. 2021).

Here, Lawrence asserts that Meeks cannot establish the third sub-element of the *Pickering* balancing test—"[s]he cannot show that her interest in attacking anyone who shares Mr. Kirk's political views as racists outweighs the Department's interest in operating effectively for *all* the State's citizens"—and thus her First Amendment retaliation claim fails as a matter of law. (Doc. No. 21 at 15 (emphasis in the original).) Lawrence specifically contends that (1) Meeks retains "only a minimal First Amendment interest in her social media activity here"; (2) "Lawrence had good reasons to believe Ms. Meeks's comment would cause internal and external disruption"; and (2) "the Department's interest in avoiding disruption outweighs Ms. Meeks's interest in baselessly accusing countless Tennesseans of being racist 'White Supremacist[s].'" (*Id*. at 15, 17, 21.) Each of these merits-based arguments invites the court "to engage in the type of fact finding and weighing of evidence that is impermissible when considering a Rule 12(b)(6) motion to dismiss."

*Sosh-Lightsy v. Mcphee*, No. 3:25-cv-01287, 2026 WL 2337562, at *9 (M.D. Tenn. Aug. 12, 2026) (refusing to "evaluate the substantive merits" of the defendant's arguments "by engaging in *Pickering* balancing" at the motion to dismiss stage). The court declines that invitation.

The Sixth Circuit has previously stressed that the *Pickering* balancing test often "cannot be performed on a 12(b)(6) motion" because of "inadequate factual development" at the pleading stage. *Perry v. McGinnis*, 209 F.3d 597, 606–07 (6th Cir. 2000) (district court "erred" by performing a *Pickering* balancing test on a 12(b)(6) motion because performing the test "required the finding of facts.") (quoting *Weisbuch v. County of Los Angeles,* 119 F.3d 778, 783 (9th Cir. 1997). Numerous other circuit courts have reached a similar conclusion. *See, e.g.*, *Brown v. City of Tulsa*, 124 F.4th 1251, 1269–70 (10th Cir. 2025) (district court "clearly erred" by "jumping the gun on conducting the balancing test before the parties proceeded to discovery" and dismissing a public employee's First Amendment retaliation claim on a 12(b)(6) motion); *Fenico v. City of Philadelphia*, 70 F.4th 151, 162 (3d Cir. 2023) (similar; district court erred by reaching third sub-element in *Pickering* balancing test without a "robust factual basis"); *Reges v. Cauce*, 175 F.4th 1014, 1035 (9th Cir. 2026) ("[T]he *Pickering* analysis requires a fact-sensitive, context-specific balancing of competing interests.") (citation and quotation marks omitted).

On identical facts, Judge Richardson of this court just last month reached the same conclusion in *Sosh-Lightsy v. Mcphee*, 2026 WL 2337562. There, the plaintiff was terminated from her employment with Middle Tennessee State University after allegedly making a series of posts about Kirk in the wake of his killing. *Id*. at *2–3. Following her termination, the plaintiff brought a § 1983 claim for First Amendment retaliation against the university's president and others, which the defendants moved to dismiss under Rule 12(b)(6) on the grounds that the plaintiff could not establish the third sub-element of the *Pickering* balancing test. *Id*. at *8. Judge Richardson denied

the defendants' motion, concluding that resolution of the defendants' *Pickering* argument required "fact finding" and the "weighing of evidence"—activities that "go well beyond what the Court can consider" on a motion to dismiss under Rule 12(b)(6). *Id*. at *9. So too here.

Without the benefit of a developed factual record, the court cannot adequately evaluate the Department's stated interests "in maintaining complete public confidence in the integrity of its investigations" and whether Meeks' single comment, made using her private Facebook account, "destroyed any perception" among the public that she would perform her official duties professionally and with objectivity. (Doc. No. 21 at 7, 18.) Those are arguments raised by Lawrence that can only be resolved by making factual determinations. For that reason, the court declines to dismiss this action based on any purported state interest and whether that interest outweighs Meeks' First Amendment rights.

**B. Qualified Immunity**

As noted above, Lawrence also asserts that qualified immunity provides independent grounds to dismiss him from this action in his individual capacity because Meeks cannot show that "her interest in castigating the Department's customers with whom she disagrees" was a "clearly established" constitutional right. (Doc. No. 21 at 7, 22–26.) For similar reasons, the court finds that ruling on Lawrence's qualified immunity defense at the motion to dismiss stage is premature without discovery.

Dismissal may be appropriate under Rule 12(b)(6) "when the defendant is entitled to a meritorious affirmative defense such as qualified immunity." *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016). For a 12(b)(6) motion to be granted on this basis, the allegations on the face of the complaint must establish that the defendant is entitled to the asserted defense as a matter of law. *Bushong v. Delaware City School Dist.*, 851 F. App'x 541, 545 (6th Cir. 2021).

As background, qualified immunity protects a public official from liability for civil damages if the public official's conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The Sixth Circuit employs a two-step inquiry to determine if an officer is entitled to qualified immunity. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Austin v. Redford Twp. Police Dept.,* 690 F.3d 490, 496 (6th Cir.2012)). The "first step is to determine if the facts alleged make out a violation of a constitutional right. The second is to ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Martin*, 712 F.3d at 957 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). These "two steps may be addressed in any order," but "both must be answered in the affirmative for a plaintiff's claim to proceed." *Id*.

The qualified immunity argument raised by Lawrence concerns whether the "clearly-established" prong has been met. (*See, e.g.*, Doc. No. 21 at 22–26.) In Lawrence's view, Meeks cannot demonstrate as a matter of law that "she had engaged in conduct protected by the First Amendment" when Lawrence terminated her employment with the Department. (*Id*. at 23.)

In this Circuit, the inquiry into whether a First Amendment right was "clearly established" is "particularly context-driven" and generally is not resolved at the pleading stage because it requires "further development of the record." *MacIntosh v. Clous*, 69 F.4th 309, 321 (6th Cir. 2023) (declining "to decide whether qualified immunity is appropriate" at the 12(b)(6) stage to bar First Amendment retaliation claim under § 1983). Instead, the Sixth Circuit has cautioned that resolution of a qualified immunity defense in a First Amendment retaliation case is best reserved for "summary judgment and not dismissal under Rule 12," given the fact-intensive nature of the

inquiry. *Id*. at 315 (quoting *Wesley v. Campbell*, 779 F.3d 421, 433–434 (6th Cir. 2015)). On these allegations, the court identifies no reason to depart from this well settled practice at this early stage in the litigation.

As Judge Richardson recognized in *Sosh-Lightsy*, the resolution of a qualified immunity defense on a 12(b)(6) motion in the context of a First Amendment retaliation claim presents "substantial and perhaps insurmountable analytical hurdles" if the court has already "found that it cannot conduct *Pickering* balancing" at this early stage. *Sosh-Lightsy*, No. 3:25-cv-01287, 2026 WL 2337562, at *14. That is because the court cannot "consider whether it was *clearly established* that *Pickering* balancing tilted against Plaintiff before the Court is actually able to conduct *Pickering* balancing in the first place." *Id*. (emphasis in the original). As resolved earlier, the court is not in a position to determine "whether a right is clearly established," given the lack of "any factual development beyond the allegations" in the Complaint. *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019) (citation and quotation marks omitted). The court therefore declines to consider Lawrence's qualified immunity defense at this time and will deny this portion of the Motion.

## V. CONCLUSION

For the reasons stated herein, Lawrence's Motion to Dismiss the Complaint under Rule 12(b)(6) will be denied. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge